E-FILED
Tuesday, 24 September, 2013  04:11:21 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

CLINTON WILLIAMS,         )
        )
        **Petitioner,**        )
    **v.**        )        **Case No. 12-CV-2051**
        )
UNITED STATES OF AMERICA,        )
        )
        **Respondent.**        )

## OPINION

On February 12, 2012, Petitioner, Clinton Williams, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1).  On April 11, 2012, Petitioner filed an Affidavit in Support of Motion Pursuant to 28 U.S.C. § 2255 (#4). On April 30, 2012, the Government filed its Response to Petitioner's Motion (#8).  On May 21, 2012, Petitioner filed a pro se Motion for Production of Transcripts (#9) and, on August 7, 2012, Petitioner filed a pro se Motion for Leave to File Supplemental Brief (#10).

This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided.  This court has also reviewed the record in the underlying criminal case.  Following this careful consideration, this court rules as follows: (1) Petitioner's pro se Motion for Production of Transcripts (#9) is DENIED; (2) Petitioner's pro se Motion for Leave to File Supplemental Brief (#10) is DENIED; (3) Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1) is DENIED;  and (4) because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

## I.  FACTS

### A.  CRIMINAL CASE

In Case No. 06-CR-20032, Petitioner was charged by indictment with various offenses arising out of a series of armed robberies.  Petitioner was charged along with his co-defendants, Brad O. Williams, Seville Williams, Tyron Thomas, Rory Tucker, Marion Jefferson III, Bobby L. Riley and Ahshun T. Collins.   Attorney Carol Dison was appointed to represent Petitioner.  Prior to trial, Petitioner's counsel filed a Motion for Psychiatric Examination.  Petitioner's counsel stated that she had noted that Petitioner appeared to have a difficult time understanding the charges against him and the nature of the proceedings.  She also stated that she received information from Petitioner's family that he had a history of mental problems and was receiving social security benefits because of his mental disease or defect.  Petitioner's counsel stated that a psychiatric examination was needed because she believed Petitioner was unable to understand the nature of the proceedings and to assist in his defense.  Petitioner's counsel also stated that she intended to file notice of the insanity defense and to argue that, at the time of the offense, Petitioner suffered from a mental disease or defect and was unable to appreciate the wrongfulness or criminality of his conduct.  The Government also filed a Motion requesting a Psychiatric or Psychological Evaluation.  Following a hearing on the motions, the Government's Motion was granted and it was ordered that "an appropriate psychiatric or psychological examination be conducted to determine the mental

competency of the defendant and to determine the existence of insanity at the time of the offenses charged in the indictment."

On August 14, 2006, the court received a forensic report completed by Jason V. Dana at the Metropolitan Correctional Center in Chicago.  The report stated that although Petitioner suffered from borderline intellectual functioning, he also made "an intentional and concerted effort to minimize his functional ability and to present himself as more cognitively impaired than is truly the case."   The report stated that Petitioner's "malingered response style prevented this examiner from obtaining valid information regarding his capacity to understand the legal proceedings or to cooperate with his attorney in the development of a defense."   The report also stated that no review of Petitioner's mental state as it pertains to criminal responsibility could be undertaken because Petitioner "emphatically denied being involved in an armed bank robbery."   A competency hearing was held before Magistrate Judge David G. Bernthal.  This court subsequently accepted Judge Bernthal's recommendation and found Petitioner mentally competent to stand trial.

Petitioner proceeded to trial on October 30, 2006, along with co-defendants Brad O. Williams, Seville Williams and Rory Tucker.  On November 10, 2006, the jury found Petitioner guilty on all five charges against him: conspiracy to commit armed bank robbery; two counts of armed bank robbery; and two counts of carrying and using a firearm during a crime of violence.  On March 12, 2007, this court sentenced Petitioner to 552 months of imprisonment, which was at the top of the advisory Sentencing Guidelines

range of 519 to 552 months.  The sentence included of a term of 60 months for conspiracy and a term of 168 months for each of the armed bank robbery convictions, all to run concurrently.  In addition, mandatory, consecutive terms of 84 months and 300 months were imposed under 18 U.S.C. § 924(c) for the firearms offenses.

Petitioner appealed, and the Seventh Circuit vacated Petitioner's sentence and remanded for resentencing.  *United States v. Williams*, 553 F.3d 1073, 1084 (7th Cir. 2010).  The Seventh Circuit noted that Petitioner has an estimated IQ of 72, which suggests borderline mental retardation.  *Williams*, 553 F.3d at 1084.  The court also noted that, according to the PSR, he has been receiving disability payments since the age of 10 because he has been diagnosed with "autistic disorders and other pervasive developmental disorders." *Williams*, 553 F.3d at 1084.  The court stated:

> At the sentencing hearing, [Petitioner's] attorney argued for a sentence on the low end of the guidelines range due to [his] mental state.  Counsel presented evidence that [Petitioner] operates at a reduced intellectual capacity and argued that he was mentally "slow," which caused him to be particularly susceptible to manipulation by his brother, Brad Williams.  Counsel noted the minimal role [Petitioner] played in the robberies, which was limited to serving as the getaway driver in three of the robberies.  He never entered any of the banks or physically harmed any people inside, unlike his co-conspirators.  Counsel argued that the combination of

4

these circumstances not only presented a mitigating factor not
accounted for in the guidelines, but also justified treating
[Petitioner] differently from his co-conspirators.

The government did not contest the evidence of
[Petitioner's] disability, conceding at the hearing that [Petitioner]
had a "mental condition that is below normal" and that he "has had
difficulty with that mental condition over the years." Furthermore,
the government stated that there was no question that Brad
Williams "manipulated" [Petitioner] to commit the crimes.

*Williams*, 553 F.3d at 1084. In sentencing Petitioner to a term of 552 months, this court
relied on Dr. Dana's report and his conclusion that [Petitioner] was exaggerating his
disability. *Williams*, 553 F.3d at 1084. The Seventh Circuit found two problems with
this analysis: (1) "the court's observation that [Petitioner] was exaggerating his mental
and intellectual disabilities is not dispositive of whether he was mentally disabled or
whether his *actual* disability justified a lower sentence," and (2) "the district court did not
take into account the combination of [Petitioner's] diminished capacity along with the
fact that the ringleader was his brother, and the exacerbating effect that might have on his
ability to think for himself." *Williams*, 553 F.3d at 1085 (emphasis in original). The
Seventh Circuit remanded for resentencing and instructed this court to "consider his
actual disability and the combination of his disability with his susceptibility to
manipulation by his brother Brad." *Williams*, 553 F.3d at 1085.

5

Prior to resentencing, Petitioner's counsel filed a motion for a new psychiatric examination, which this court allowed. Dr. Ashley Beitel conducted the examination and filed a report. Dr. Beitel concluded, among other things, that Petitioner was developmentally disabled with a diagnosis of mild mental retardation; was not intellectually capable of malingering; knew right from wrong but was limited in his ability to recognize if and when he has become involved in criminal behavior; and had a history of being taken advantage of because of his limited intelligence and his wish to be befriended.

At resentencing, the parties agreed that Petitioner should be sentenced to a term of 444 months of imprisonment, consisting of 60 months of imprisonment for the conspiracy and armed robbery convictions, to be served concurrently, followed by the mandatory, consecutive 384 months of imprisonment for the § 924(c) convictions. This court agreed and imposed a sentence of 444 months. Petitioner again appealed, and his appointed counsel sought to withdraw, asserting there were no non-frivolous issues to appeal. The Seventh Circuit allowed counsel's request and dismissed Petitioner's appeal. *United States v. Williams*, 399 Fed. Appx. 113, 2010 WL 4259382, at *2 (7th Cir. 2010). The Seventh Circuit noted that the sentence imposed following remand was "both 75 months below the low end of the advisory guideline range and a full nine years lower than the term previously imposed." *Williams*, 399 Fed. Appx. 113, at *2. Petitioner's petition for a writ of certiorari with the United States Supreme Court was denied on February 22, 2011.

## B.  2255 MOTION

On February 22, 2012, Petitioner filed his pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1).  Petitioner claimed that he was denied the effective assistance of trial counsel.  In particular, he argued that his counsel was ineffective because: (1) she did not get a second opinion from a psychiatric examiner prior to trial, which would have shown that he was not competent to stand trial and lacked the necessary mens rea to commit the crimes charged; (2) she did not move for a severance prior to trial; (3) she did not conduct an adequate investigation; (4) she failed to cross-examine witnesses; (5) she failed to object to prejudicial hearsay testimony; and (6) she failed to request certain jury instructions and object to the court's instructions as given.  This court notes that Petitioner's arguments are hard to follow because they have been jumbled together and, at times, make little sense.  On April 11, 2012, Petitioner filed an Affidavit in Support of Motion Pursuant to 28 U.S.C. § 2255 (#4).  Petitioner did not set out any facts in his Affidavit but instead stated that he "swears to all of the statements within the filed 2255 sent previously to this Court."

On April 30, 2012, the Government filed its Response (#8) and argued that Petitioner's claims are without merit.  The Government argued that Petitioner had not shown that he was prejudiced by his counsel's failure to assert a diminished capacity defense and also argued that Petitioner's remaining arguments were "perfunctory and undeveloped, are based on nothing in the record or established law, and are therefore facially inadequate."  On May 21, 2012, Petitioner filed a pro se Motion for Production of

Transcripts (#9).  On August 7, 2012, Petitioner filed a pro se Motion for Leave to File Supplemental Brief (#10).  Petitioner stated that he had only recently received the transcripts from his resentencing hearing and asked this court to allow him to amend his § 2255 Motion to add claims based upon the resentencing transcript.  Plaintiff attached a Memorandum to Supplement his § 2255 Motion.  In his Supplemental Memorandum, Petitioner argued that his appointed counsel on resentencing was ineffective because counsel did not challenge his underlying convictions of conspiracy and his convictions on the firearms charges and armed robbery charges.  Petitioner also seems to be arguing that his counsel was ineffective for failing to introduce evidence of his mental abnormality at his resentencing.

## II.  ANALYSIS

### A.  PROCEDURAL MOTIONS

#### 1.  MOTION FOR PRODUCTION OF TRANSCRIPTS

In his Motion for Production of Transcripts (#9), Petitioner argued that he needs the transcripts from the proceedings against him to "refresh his recollection."  However, this court notes that Petitioner attached portions of the transcript from his trial and original sentencing hearing to his Motion (#1).  In addition, in his Motion for Leave to File Supplemental Brief (#10), Petitioner stated that he had just received the transcript of his resentencing hearing.  It therefore appears that Petitioner does have copies of the transcripts from the proceedings against him.  In any case, this court concludes that Petitioner has not adequately shown that production of the transcripts is necessary.  The

applicable statute allows an indigent defendant to obtain free transcripts to prosecute a §

2255 action if this court "certifies that the suit or appeal is not frivolous and that the

transcript is needed to decide the issue presented by the suit or appeal."  28 U.S.C. §

753(f).  This court concludes that Petitioner's claim that he needs transcripts to "refresh

his recollection" is not sufficient to show that Petitioner needs the transcripts to proceed

with his § 2255 action.  Accordingly, Petitioner's Motion for Production of Transcripts

(#9) is DENIED.

## 2.  MOTION FOR LEAVE TO SUPPLEMENT BRIEF

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

one-year period of limitations applies to motions filed under § 2255.  28 U.S.C. § 2255(f).

The United States Supreme Court has stated that "Congress enacted AEDPA to advance

the finality of criminal convictions."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  "To that

end, it adopted a tight time line, a one-year limitation period ordinarily running from 'the

date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review.'" *Mayle*, 545 U.S. at 662, *quoting* 28

U.S.C. § 2244(d)(1)(A).  The Supreme Court therefore held that a timely filed habeas

petition cannot be amended to add new, unrelated claims after the AEDPA's one-year

limitation period has run.  *Mayle*, 545 U.S. at 662-64; *see also Ciota v. United States*,

2010 WL 4683985, at *8 (C.D. Ill. 2010) (applying *Mayle* to a request to amend a Motion

under § 2255); *Jackson v. United States*, 2007 WL 1062923, at *2-3 (C.D. Ill. 2007)

(same); *United States v. Hull*, 2006 WL 752481, at *1 (N.D. Ind. 2006) (court refused to

consider claims brought in supplemental motions under § 2255 which were barred by the one-year statute of limitations).

In this case, Petitioner has recognized that his case was final on February 22, 2011, when the United States Supreme Court denied his petition for a writ of certiorari.  The one-year statute of limitations began to run on that date.  Petitioner filed his Motion under § 2255 on February 22, 2012.  This Motion was timely and raised the claims already set out by this court.  No new claims could be raised after the statute of limitations ran on February 22, 2012.  *See Mayle*, 545 U.S. at 662-64; *Ciota*, 2010 WL 44683985, at *8.  Petitioner's Supplemental Memorandum, which raised entirely new claims, was not filed with this court until August 7, 2012.  Because this was more than five months after the one-year limitation period had run, the Supplemental Memorandum is time-barred.

This court notes that, in any case, the ineffective assistance of counsel claims raised by Petitioner are entirely without merit.  Petitioner's case was remanded by the Seventh Circuit for resentencing.  If the appellate court identifies "a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error."  *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996).  This is commonly referred to as the mandate rule, which "requires the lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995).  Here, the Seventh Circuit remanded Petitioner's case solely for resentencing and instructed this court to "consider his actual disability and the combination of his disability with his susceptibility to

10

manipulation by his brother Brad." *Williams*, 553 F.3d at 1085. The Seventh Circuit's mandate prevented this court from considering other issues at the resentencing hearing. *See Polland*, 56 F.3d at 778. Therefore, Petitioner's resentencing counsel could not have challenged his underlying convictions and, therefore, could not have been ineffective for failing to do so. In addition, contrary to Petitioner's assertion, the entire resentencing hearing revolved around his mental disability. At the resentencing hearing, Petitioner's counsel introduced Dr. Beitel's report as evidence of Petitioner's mental disability and susceptibility to manipulation by his brother. Petitioner's counsel argued that, based on this evidence, Petitioner's sentence should be lowered from 168 months to 60 months on the conspiracy and armed bank robbery convictions. This court agreed and reduced Petitioner's sentence by 108 months at resentencing.

Because Petitioner's Supplemental Memorandum is time-barred and entirely without merit, Petitioner's pro se Motion for Leave to File Supplemental Brief (#10) is DENIED.

## B. MOTION UNDER 2255

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), *citing Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can "demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th

11

Cir. 1995).  Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255.

Petitioner claims are all based upon his contention that he was denied the effective assistance of trial counsel.  "The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).  To succeed on a claim of ineffective assistance, a petitioner must prove: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 678-88, 693 (1984); *Wyatt*, 574 F.3d at 457-58.  With respect to the performance prong of the two-part test, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Wyatt*, 574 F.3d at 458, *quoting Strickland*, 466 U.S. at 689.  A petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court then determines "whether such acts or omissions fall outside the wide range of professionally competent assistance." *Wyatt*, 574 F.3d at 458. Regarding the prejudice prong of the two-part test, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Petitioner has argued that his trial counsel was ineffective because she did not get a second opinion from a psychiatric examiner prior to trial, which Petitioner argues would have shown that he was not competent to stand trial and lacked the necessary mens rea to commit the crimes charged.  In making this argument, Petitioner has relied on Dr. Beitel's report, which was obtained following remand from the Seventh Circuit for resentencing.  Dr. Beitel's report does discuss Petitioner's mental disabilities.  However, the report does not include an opinion that Petitioner was not competent to stand trial nor does it state that Petitioner lacked the necessary mens rea to commit the crimes charged.

This court concludes that Petitioner has not shown that he was prejudiced by his trial counsel's failure to obtain a second opinion.  Petitioner has not shown that there is a reasonable probability that a second opinion would have resulted in a finding that he was not fit to stand trial.  After Dr. Beitel's report, Petitioner was considered fit to proceed to resentencing and was resentenced by this court.  As far as his claim that a second opinion would have resulted in a finding that he lacked the mens rea to commit the crimes charged, this court agrees with the Government that Petitioner is arguing that he would have been able to successfully assert a diminished capacity defense.  A diminished capacity defense is raised where the defendant claims that his mental condition is such that he "cannot attain the culpable state of mind required by the definition of the crime." *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir. 1989).  This court concludes that Petitioner has not shown that a second psychiatric examination would have supported a diminished capacity defense.  *See Dale v. United States*, 2010 WL 3023426, at *9 (S.D.

Ill. 2010). In addition, the Government is correct that "diminished capacity is a defense only to *specific* intent crimes." *Fazzini*, 871 F.2d at 641 (emphasis in original). Armed bank robbery is a general intent crime so a diminished capacity defense was not available. *Fazzini*, 871 F.2d at 641; *see also United States v. Owens*, 424 F.3d 649, 654 (7th Cir. 2005). In addition, § 924(c) does not designate an additional mental state beyond that accompanying the act, so it is not a specific intent crime and a diminished capacity defense was not available as to the charged firearms offenses either. *See United States v. Stevenson*, 135 F. Supp. 2d 878, 882 (N.D. Ill. 2001) (crime is not specific intent crime where elements of crime do not designate an additional mental state beyond that accompanying the act). Moreover, this court agrees with the Government that, even if Petitioner could have asserted a diminished capacity defense to the conspiracy charge (which is a specific intent crime), this was the least serious offense and was of no sentencing consequence. Therefore, for all of the reasons stated, this court has concluded that Petitioner has not shown he was prejudiced by his counsel's failure to obtain a second psychiatric examination prior to trial.

This court also agrees with the Government that Petitioner has not shown that his counsel was ineffective in any other respect. Petitioner was appointed a very skilled lawyer who vigorously represented him at trial and was successful in appealing his sentence. After careful consideration, this court concludes that Petitioner has not shown that she provided ineffective assistance of counsel in any way. This court first concludes that Petitioner has not shown that his counsel was ineffective for failing to request a

14

severance. A high standard must be met before a severance will be allowed and, even if a defendant can show prejudice, severance is not necessary if limiting instructions will cure the risk of prejudice. *See United States v. Carter*, 695 F.3d 690, 700-01 (7th Cir. 2012). Under the applicable standard, Petitioner has not shown that severance was necessary in his case.   In fact, the Seventh Circuit rejected an argument raised by Petitioner's co-defendant Tucker and concluded that the defendants were properly joined in this case. *Williams*, 553 F.3d at 1079 (noting that Tucker did not show prejudice because "the district court gave a limiting instruction both before the presentation of the evidence and again at closing arguments that the jury should consider the evidence regarding each defendant separately").

Next, this court agrees with the Government that Petitioner has failed to provide any facts to show that his counsel did not conduct an adequate investigation, did not adequately cross-examine witnesses and did not object to prejudicial hearsay testimony. *See Prewitt*, 83 F.3d at 819-20 (conclusory allegations do not suffice under § 2255).   As far as jury instructions, Petitioner has argued that his counsel was ineffective because no jury instructions were given regarding the credibility of accomplice witnesses.   Petitioner also argued that this court failed to instruct the jury on the elements of the offenses charged and his right to testify and did not give the "mere presence" instruction.   All of these arguments are completely frivolous.   The portion of the trial transcript Petitioner attached to his Motion in support of this argument is actually the preliminary instructions this court gave to the jury.   In any case, both the preliminary and final instructions

15

included a "mere presence" instruction as well as comprehensive instructions regarding the elements of the offenses charged, including conspiracy, and Petitioner's right not to testify (Petitioner did not testify at trial). In addition, the Government is correct that the final jury instructions given to the jury prior to closing arguments and deliberations included a cautionary instruction concerning the Government's cooperating witnesses, stating that their testimony should be considered with "caution and great care." In fact, this court gave five separate instructions regarding the testimony of cooperating witnesses in this case which thoroughly instructed the jury regarding the credibility of Nathein Franklin, Olivia James, Marion Jefferson, Tyron Thomas, Ahshun Collins, Bobby Riley and Derrick Grace. There is absolutely no factual basis for Petitioner's argument regarding jury instructions.

For all of the reasons stated, Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1) is DENIED.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).  This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's pro se Motion for Production of Transcripts (#9) is DENIED.

(2) Petitioner's pro se Motion for Leave to File Supplemental Brief (#10) is DENIED.

(3) Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1) is DENIED.

(4) Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

(5) This case is terminated.

ENTERED this 24th day of September, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE

17